UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KIRTRIYA THOMAS,

        *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

        *Defendant*.

Civil Action No. 23-01378 (AHA)

**Memorandum Opinion**

    Plaintiff Kirtriya Thomas, a former Metropolitan Police Department ("MPD") officer, filed this suit against the District of Columbia, alleging MPD discriminated against her in its handling of her on-duty injury, return to work after having a baby, and health and safety during the COVID-19 pandemic, because she is Black and a woman. Thomas asserts claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the D.C. Human Rights Act (DCHRA). The District moves to dismiss the complaint for failure to state a claim. The Court agrees the complaint has not stated a claim and therefore grants the motion to dismiss.

**I.**    **Background[1]**

    In February 2019, Thomas was involved in a car accident while on patrol, which caused significant injuries to her shoulder and knee. ECF No. 12 ¶ 17. The next day, Thomas reported to the District's Police and Fire Clinic for evaluation, as required by MPD policy. *Id.* ¶¶ 20–21. After the clinic did not refer Thomas to a specialist and she did not see improvement in her pain and

---

[1] As required at the pleading stage, the Court accepts the complaint's well-pled allegations as true and draws all reasonable inferences in Thomas's favor.

symptoms, Thomas told the clinic's director, Matthew Miranda, that she was not receiving the right treatment for all her injuries. *Id.* ¶¶ 24–26. Miranda admitted that the clinic "dropped the ball." *Id.* ¶ 27. Approximately a week later, the clinic referred Thomas to a specialist for evaluation. *Id.* ¶ 28. Thomas was ultimately diagnosed with sprains in her lower back, neck, and knee, as well as a concussion with symptoms that would abate. *Id.* ¶ 29.

Around this time, Thomas became pregnant; she had a child and went on maternity leave later that year. *Id.* ¶ 30. In January 2020, while Thomas was on maternity leave, Miranda instructed her to come into the clinic, in part for an evaluation of the injuries she had sustained in the car accident, and in part so the clinic could verify that she had actually given birth and was breastfeeding her baby like she claimed. *Id.* ¶¶ 54, 59. When Thomas returned to work, she was placed on light duty because of her injuries. *Id.* ¶ 63. She soon discovered that there was no private or clean place to pump milk. *Id.* ¶¶ 64–65. She reached out to a sergeant about the situation, and the sergeant helped her find a solution. *Id.* ¶¶ 66–67.

Not long after, the COVID-19 pandemic forced the world to a standstill. Around April 2020, Thomas's union steward asked Miranda to let Thomas work remotely to avoid exposing her and her newborn baby to COVID-19. *Id.* ¶ 69. Miranda rejected the request, although some of Thomas's white colleagues were allowed to work from home. *Id.* ¶¶ 70, 73. Thomas was exposed to COVID-19 by a colleague and quarantined at home as recommended by MPD and CDC guidance. *Id.* ¶¶ 74–76. Contrary to those policies, a sergeant insisted that Thomas come to the clinic to report her COVID-19 status in person. *Id.* ¶ 79. The clinic staff member who met with Thomas initially recorded Thomas's absence from work as a COVID-19 quarantine. *Id.* ¶ 82. The next day, however, someone changed Thomas's leave status to indicate that she was out because of her asthma, not COVID-19 exposure. *Id.* ¶ 84. Thomas alleges this was an intentional strategy

by Miranda or someone who worked for him to force Thomas to use up her accrued leave. *Id*. ¶ 86. Thomas complained to her union steward about this misclassification. *Id*. ¶ 90.

While navigating the challenges of the pandemic, Thomas was still experiencing the effects of the injuries she sustained in the car accident. Although Thomas scheduled shoulder surgery for September 2020 to aid her recovery, Miranda demanded that she come to the clinic for what Thomas says was a premature medical retirement evaluation. *Id*. ¶¶ 97, 99–100. In August 2020, Thomas had a charged conversation with Miranda, who urged her to stop breastfeeding because it would interfere with her ability to wear a bulletproof vest and told her to find a new obstetrician who would not encourage her to breastfeed. *Id*. ¶¶ 105, 110–11. Thomas flagged this conversation to her union steward, who escalated her complaint to Miranda and Police Chief Robert Contee. *Id*. ¶¶ 116–19.

Meanwhile, the medical retirement process continued. On September 9, 2020, Thomas was examined at the clinic by Dr. Rosenthal. *Id*. ¶¶ 121, 124. While speaking to Thomas about her sensitive medical information, Dr. Rosenthal took a personal call. *Id*. ¶ 125. Thomas says she felt uncomfortable because the person on the other line could presumably hear everything Dr. Rosenthal was telling her. She raised her concern with Dr. Rosenthal, who became very angry and told Thomas she should get ready to be written into retirement. *Id*. ¶¶ 127, 129–30. Dr. Rosenthal referred Thomas for medical retirement the same day. *Id*. ¶ 148. Thomas complained about the encounter with Dr. Rosenthal to her union steward. *Id*. ¶¶ 141–42.

After the referral for medical retirement, Thomas continued to have negative experiences with the clinic. Notably, Miranda failed to comply with the union steward's instructions to have a female officer in the room during one of Thomas's follow-up appointments. *Id*. ¶¶ 165–66. As a result, the union steward contacted Chief Contee in March 2021 and scheduled a meeting with him

3

to discuss Thomas's issues with the clinic. *Id.* ¶ 168. Chief Contee canceled the meeting at the last minute and directed Thomas to another supervisor instead, who did not offer to halt the medical retirement process but promised Thomas that it would be fair. *Id.* ¶¶ 171, 174–75.

In October 2021, the District's Police and Firefighters' Retirement and Relief Board retired Thomas against her wishes. *Id.* ¶ 176. The D.C. Court of Appeals affirmed the Board's order. *Thomas v. D.C. Police & Firefighters' Ret. & Relief Bd.*, No. 21-AA-883, slip. op. at 1 (D.C. Jan. 3, 2023). According to Thomas, she never had an adequate opportunity to heal from her injuries prior to her referral. *Id.* ¶ 176. In April 2022, Thomas filed an Equal Employment Opportunity Commission ("EEOC") charge about her termination and the events leading to it. *Id.* ¶ 178. In May 2023, Thomas filed this action against the District alleging race discrimination in violation of 42 U.S.C. § 1981, as well as race and gender discrimination and retaliation in violation of Title VII and the DCHRA. The District has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.   Discussion

To survive dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (second alteration in original) (quoting *Twombly*, 550 U.S. at 556).

### A. Thomas Has Not Stated A Claim For Municipal Liability Under 42 U.S.C. §§ 1981, 1983.

In Counts I and II of her complaint, Thomas claims the District violated 42 U.S.C. § 1981 by subjecting her to race discrimination and retaliation. Section 1981 "protects the right 'to make and enforce contracts' free from racial discrimination." *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017) (quoting 42 U.S.C. § 1981(a)). That protection extends to employment contracts. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 449–50, 455 (2008). Section 1981 also prohibits retaliation against individuals who engage in activity protected by the statute. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015). When, as here, a § 1981 claim is asserted against a municipality, 42 U.S.C. § 1983 provides the cause of action. *Brown v. Sessoms*, 774 F.3d 1016, 1021 (D.C. Cir. 2014). That means the plaintiff must adequately plead the two requirements for municipal liability under that section. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). First, the plaintiff must plausibly allege a constitutional violation, and second, the plaintiff must plausibly allege a municipal custom or policy that caused the violation. *Id*. Thomas asserts constitutional violations based on alleged discrimination in her clinical care, misclassification of her COVID-19 exposure as an asthma-related absence, and premature referral to the Retirement Board (the latter of which she also alleges is retaliatory). ECF No. 12 ¶¶ 194, 196, 198, 217. The District does not challenge whether Thomas plausibly alleged a constitutional violation; it argues instead that Thomas has failed to allege a policy or custom causing those violations.

A plaintiff can show a custom or policy in different ways. This includes pointing to "the explicit setting of a policy by the government" or "the action of a policy maker within the government." *Baker*, 326 F.3d at 1306. In the absence of direct actions by the policy maker, a plaintiff can point to "adoption through a knowing failure to act" despite "actions by his

5

subordinates that are so consistent that they have become custom" or "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk" of the constitutional violation. *Id.* (citation and internal quotation marks omitted). No matter which form the municipal custom or policy takes, a plaintiff must show the custom or policy is the "moving force" behind the alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 389 (1989) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Here, Thomas argues for municipal liability on a theory that Chief Contee, as a municipal policy maker, either took direct actions to cause the constitutional violations or failed to take action despite knowing about the consistent problematic actions of his subordinates. As Thomas puts it, her § 1981 claim "rises and falls on the extent to which [she] can establish that the Chief of Police was aware of, and condoned the deep-seated and consistent race discrimination at MPD." ECF No. 16 at 9. The complaint does not plead sufficient facts to support this.

First, the complaint does not adequately allege direct policy maker action. The complaint describes only one affirmative act by Chief Contee: that he scheduled a meeting with Thomas after her union steward complained about Miranda's treatment of her, and later canceled it. Neither the scheduling nor canceling of the meeting could have been the "moving force" behind the alleged constitutional violations because it happened after them—after the alleged substandard care for Thomas's injuries, COVID-19 leave misclassification, and referral to the Retirement Board. As the District points out, it appears that the referral to the Retirement Board occurred not because of any action taken by Chief Contee, but under a D.C. Code provision that requires an MPD officer to be referred for retirement if they have been on limited duty for a specified length of time following an on-duty injury "regardless of whether the prognosis is that the [officer] will be able

6

to perform the full range of duties after achieving maximum medical improvement." D.C. Code Ann. § 5-633(c).

In her brief opposing dismissal, Thomas does not dispute that the sole allegation involving direct action by Chief Contee followed most of the events alleged and that the D.C. Code provision, by its terms, required referral. She argues that Chief Contee could have retroactively stopped the referral to the Retirement Board but chose not to, and that the District selectively enforces the D.C. Code against Black officers. ECF No. 16 at 8, 20–21. But neither assertion is supported by specific allegations in the complaint. Thomas's conclusory allegation that Chief Contee canceled the meeting because he "supported the actions being taken by Mr. Miranda" is undermined by Thomas's own allegation that Chief Contee referred Thomas to Miranda's supervisor. ECF No. 12 ¶¶ 171–72. And Thomas's complaint does not mention the Code provision requiring her referral to the Retirement Board, let alone allege facts which support the conclusion that it is selectively enforced.

Second, the complaint also fails to plead municipal liability based on Chief Contee's knowing failure to act. Thomas does not allege facts showing a practice of discriminating against Black officers in treatment of injuries, sick leave classification, or referrals for medical retirement, from which one could infer a policy or custom. In fact, the complaint does not allege any of these things had happened before.

To be sure, Thomas has alleged signs of a concerning culture at MPD, including during the time Thomas was employed there, which has given rise to complaints of discrimination and reports of a toxic environment. The complaint cites to other civil cases alleging discrimination against Black women and attempts to incorporate the complaint filed in another pending case alleging race and gender discrimination at MPD. *Id.* ¶¶ 33, 180 (citing *Brinkley v. District of Columbia*, No. 21-

7

cv-01537).[2] She also relies on a report evaluating the culture at MPD prepared by the Police Executive Research Forum at the District's request, which stated personnel had described a "culture of retaliation" and of people "being regarded as 'angry Black women'" when raising issues. *Id.* ¶ 40. The allegations support the conclusion that MPD had significant work to do to improve its workplace, including to build a workplace free of discrimination and retaliation, but demonstrating a toxic culture is not sufficient to show a consistent practice of engaging in the constitutional violations Thomas alleges here. *See, e.g.*, *Leach v. District of Columbia*, No. 19-cv-00947, 2022 WL 1316436, at *12–13 (D.D.C. May 3, 2022) (rejecting reliance on "data about lawsuits, settlements, District budgets, and sustained complaints about MPD officers' use of force" to show a policy or custom where they were "simply too generic to plausibly support municipal liability based on custom for Plaintiff's specific excessive use-of-force claim"); *Johnson v. District of Columbia*, No. 22-cv-03167, 2023 WL 2770392, at *5–6 (D.D.C. Apr. 4, 2023) (rejecting reliance on prior incidents and a report to show a policy or custom where they "bear too attenuated a relationship to the predicate constitutional violation Plaintiff alleges to establish a municipal custom").

The first amended complaint accordingly fails to plausibly allege municipal liability as required to proceed against the District in Counts I and II.

---

[2] The Court considers only the specific allegations in other cases that Thomas asserts in her own complaint. The Court does not consider allegations from other complaints that are incorporated merely by reference. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1326 (4th ed.) (observing that "it has been held that allegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference").

### B. Thomas Fails To State A Viable Gender Or Race Discrimination Claim Under Title VII Or The DCHRA.

In Counts III, IV, VII, and VIII of the complaint, Thomas claims disparate treatment based on her gender and race, in violation of Title VII and the DCHRA. To make out a prima facie case of disparate treatment under Title VII and the DCHRA, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse action generates an inference of discrimination. *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). Disparate treatment claims brought under the DCHRA are analyzed according to the same framework. *Howard Univ. v. Green*, 652 A.2d 41, 45 n.3 (D.C. 1994). The prima facie case standard "should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Accordingly, "the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). However, it is appropriate to "explore the plaintiff's *prima facie* case at the dismissal stage to determine whether the plaintiff can ever meet her initial burden to establish a *prima facie* case." *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 270 (D.D.C. 2018) (citation and internal quotation marks omitted). That approach is consistent with various D.C. Circuit decisions that analyze whether a complaint survives a motion to dismiss under Rule 12(b)(6) by examining whether the plaintiff's allegations plausibly allege the elements of a prima facie case. *See, e.g.*, *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (applying this approach to a Title VII retaliation claim); *Nanko Shipping*, 850 F.3d at 467 (applying this approach to a § 1981 discrimination claim).

Thomas does not allege the Retirement Board's decision to retire her was discriminatory. ECF No. 16 at 24 (clarifying that Thomas is not "attacking the decision of the Board"). Rather, as

9

Thomas stresses, "*[t]his case is about everything that happened to Plaintiff before [the Board's] decision was made.*" *Id*. at 1 (emphasis in original). Thomas's discrimination claim is premised primarily on the decision to refer her to the Retirement Board in the first place, as well as actions District employees took before the referral, including rejecting her remote work request; instructing her to visit the clinic during quarantine; providing substandard care for her on-duty injury; discouraging her from breastfeeding; and advising her to get a new obstetrician. *See* ECF No. 12 ¶¶ 70, 80, 153, 234, 246, 249–50. These allegations fail to state a claim for a few reasons.

First, the claims are time barred. The Court is mindful that it "should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). "At the motion to dismiss stage, dismissal on statute-of-limitations grounds is proper 'only if the complaint on its face is conclusively time-barred.'" *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 788 (D.C. Cir. 2019) (quoting *Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019)). Here, that is the case. The complaint states that Thomas received notification that she should prepare to appear before the Retirement Board on December 24, 2020. Yet she did not file her administrative charge with the EEOC until April 20, 2022, after the 300-day window to do so before bringing a Title VII claim and the one-year statute of limitations for a DCHRA claim. *See* 42 U.S.C. § 2000e-5(e)(1); *Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004); D.C. Code Ann. § 2-1403.16(a); *see also Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008) (recognizing that the DCHRA's one-year limitations period is tolled pending a timely filed EEOC charge).

Second, even assuming Thomas's claims are not time-barred, she does not contend that the referral or the actions leading to it are adverse employment actions. Indeed, her complaint admits otherwise, stating that "no final adverse action had been taken against her" at that point. ECF No. 12 ¶ 177. Thomas instead alleges that the Retirement Board's decision to retire her was the adverse employment action against her. *Id.* ¶ 241. But, as discussed above, Thomas does not assert that the Retirement Board's decision was discriminatory. This is fatal to Thomas's claim. To state a claim under Title VII and the DCHRA, a plaintiff must allege conduct that is both discriminatory and an adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). A plaintiff does not state a disparate treatment claim by alleging discriminatory acts that do not amount to adverse employment actions and, separately, a non-discriminatory adverse employment action.[3]

Third, insofar as Thomas's disparate treatment claims rely on referral to the Retirement Board, they also fail because they do not give rise to an inference of discrimination. Thomas has not plausibly alleged that the referral was based on her membership in a protected class. As the District explains in its motion to dismiss, D.C. law requires it to refer officers for medical retirement when they have spent 172 cumulative workdays in less-than-full-duty status over a two-year period because of an on-duty injury. D.C. Code Ann. § 5-633(c). Thomas does not dispute that this provision applied to her. *See* ECF No. 16 at 20, 23. She instead suggests in her briefing that the District exercises discretion on whether to refer officers under this provision and selectively enforces it based on race. *Id.* at 20–21. However, the complaint does not plausibly allege selective enforcement of the mandatory referral provision. Thomas has accordingly failed

---

[3] Because Thomas affirmatively concedes referral to the Retirement Board and the preceding discriminatory incidents were not adverse employment actions, the Court does not independently consider the question.

to plausibly allege that she was referred because of her membership in a protected class, rather than the requirements of D.C. law.

### C.     Thomas Has Not Stated A Title VII Or DCHRA Retaliation Claim.

Thomas's retaliation claims under Title VII and the DCHRA, in Counts V, VI, IX, and X, must be dismissed for similar reasons. Title VII "forbids retaliation against an employee because she has 'opposed any practice made an unlawful employment practice by' Title VII, or because she 'made a charge' under Title VII." *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)). To prove a retaliation claim, a plaintiff must demonstrate that (1) she engaged in statutorily protected activity; (2) she experienced an adverse employment action; and (3) there is a causal link between the two. *Howard R.L. Cook*, 737 F.3d at 772. Retaliation claims under the DCHRA are analyzed according to the same framework. *Howard Univ.*, 652 A.2d at 45 & n.3. Although Thomas does not have to prove these three elements at the pleading stage the way she would have to at the summary judgment stage or at trial, she must "plausibly establish" each of them. *Howard R.L. Cook*, 737 F.3d at 772; *see also Nanko Shipping*, 850 F.3d at 467.

Thomas alleges that she was referred to the Retirement Board in retaliation for engaging in protected activity. ECF No. 12 ¶¶ 150, 240, 256. She alleges that her referral followed her complaints about the conditions in the lactation room upon returning from maternity leave; being required to work in person during the COVID-19 pandemic; the misclassification of her COVID-19 leave as an asthma-related absence; comments discouraging breastfeeding and advising her to find a new obstetrician; and Dr. Rosenthal's phone call during her medical appointment when discussing her sensitive information. *Id.* ¶¶ 66, 69, 90, 116, 127, 141; *see* ECF No. 16 at 17–18.

As an initial matter, it is not clear all of these workplace complaints were protected activity. "Not every complaint garners its author protection under Title VII." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). Although "no 'magic words' are required, the complaint must

in some way allege unlawful discrimination." *Id*. (citing cases where workplace complaints were not protected because they did not complain of discrimination). Here, Thomas alleges that she complained of various workplace experiences to different people, but, with the exception of her complaints about Miranda and Dr. Rosenthal, she does not allege that the complaints mentioned race or gender discrimination so as to be protected by Title VII and the DCHRA. The experiences do not involve obvious race or gender discrimination and therefore complaining about them without more would not have communicated that she "opposed" an "unlawful employment practice" as is required for a retaliation claim. 42 U.S.C. § 2000e-3(a).

Even insofar as Thomas engaged in protected activity by complaining of discrimination, she fails to identify any retaliation in the form of an adverse employment action. As previously described, although Thomas alleges "she was prematurely and unfairly referred to the retirement board as a form of retaliation," she does not contend that the referral itself qualifies as an adverse action. ECF No. 12 ¶¶ 150, 177, 241, 256–57. And, as with her discrimination claims, Thomas fails to plausibly allege a causal link between the referral and her protected activity. Thomas does not dispute that her referral was required by D.C. law given the length of time she was on light duty and her complaint does not plausibly allege facts showing that the District selectively wielded this law in a manner that could be characterized as retaliatory.[4]

---

[4] The District's motion to dismiss asserted timeliness only as to Thomas's discrimination claims and not her retaliation claims. The Court accordingly does not consider whether the retaliation claims are untimely on the face of the complaint.

## III.   Conclusion

Thomas's claims are dismissed without prejudice. A separate order accompanies this memorandum opinion.

_____

AMIR H. ALI
United States District Judge

Date:   May 2, 2025